IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 28, 2001 Session

## ROY LANE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cocke County**
**No. 21,315     Ben W. Hooper, II, Judge**

**No. E2000-00310-CCA-R3-PC**
**May 17, 2002**

This appeal by the petitioner, Roy Lane, involves both a delayed appeal from his first degree murder conviction and an appeal from the denial of post-conviction relief. In the delayed appeal, the petitioner contends that the Cocke County Circuit Court (1) improperly admitted evidence about the petitioner's prior bad acts and (2) gave erroneous jury instructions. In the post-conviction appeal, the petitioner claims that he received the ineffective assistance of trial counsel. As to the petitioner's delayed appeal, we conclude that the trial court did not err and affirm his conviction for first degree premeditated murder. As to his post-conviction petition, we affirm the trial court's finding that the petitioner received the effective assistance of counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Tim S. Moore, Newport, Tennessee, for the appellant, Roy Lane.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the murder of the petitioner's ex-wife. On January 18, 1990, a Cocke County Circuit Court jury convicted the petitioner of murdering the victim, and the trial court sentenced him to life imprisonment. This court upheld the conviction on direct appeal. See State v. Roy G. Lane, No. 03C01-9109-CR-299, Cocke County (Tenn. Crim. App. Apr. 10, 1992). The petitioner filed a petition for post-conviction relief on September 10, 1992, alleging various issues, including that the trial court improperly instructed the jury and that he received the ineffective assistance of counsel. The trial court dismissed the petition without holding an evidentiary hearing. On appeal, this court affirmed in part the trial court's dismissal of the petition but remanded the case

with instructions that the trial court determine whether the petitioner was entitled to a delayed appeal and whether the petitioner received the ineffective assistance of counsel. See Roy Lane v. State, No. 03C01-9403-CR-00089, Cocke County (Tenn. Crim. App. Jan. 27, 1995). After an evidentiary hearing, the trial court granted the petitioner a delayed appeal. However, the court found that the petitioner received the effective assistance of counsel and denied his petition for post-conviction relief.

This long and complicated history has resulted in the present delayed appeal and appeal from the trial court's denial of post-conviction relief. In Gibson v. State, 7 S.W.3d 47, 49 (Tenn. Crim. App. 1998), this court held that a "petition for post-conviction relief, complaining of the original conviction and sentence, may not be maintained while a direct appeal of the same conviction and sentence is being prosecuted." See also Laney v. State, 826 S.W.2d 117, 118 (Tenn. 1992). Thus, when a post-conviction court is faced with a petitioner who seeks "post-conviction relief both in the form of a new trial and a delayed appeal, . . . the better procedure is for the trial court to grant the delayed appeal, when warranted, and dismiss the collateral attack upon the conviction without prejudice." Gibson, 7 S.W.3d at 50. While we recognize that Gibson states that a direct appeal and a post-conviction appeal cannot be maintained at the same time, given the confusing background of the petitioner's previous appeals in this matter, we believe that it is necessary to address both the petitioner's delayed appeal and post-conviction issues.

At the evidentiary hearing, the petitioner's trial attorney testified that the petitioner's case was difficult to defend because several witnesses had seen the petitioner shoot the victim and the petitioner had confessed to police soon after the murder. He said that he tried to get the jury to convict the petitioner of a lesser included offense of first degree murder and that he also used a diminished capacity defense. He said he developed these defenses through the petitioner, who testified at trial. He said the petitioner wanted to testify because the petitioner felt the jury needed to hear about his relationship with the victim. He said a clinical psychologist also testified about the petitioner's diminished capacity and the petitioner's love/hate relationship with the victim.

The attorney testified that he was aware at trial that the petitioner had stabbed the victim on Christmas Day in 1988 and that the victim had filed a warrant against the petitioner for the stabbing. He said that he also knew that sometime after the stabbing, the petitioner's brother had written a threatening letter for the petitioner and had delivered the letter to the victim. He said that after the petitioner was convicted, he visited the petitioner in jail and that the petitioner told him there was no need to appeal the case. He said that one or two days later, he took a waiver of appeal form to the jail for the petitioner to sign, but the petitioner had been sent to the penitentiary. He said he "just forgot about it from there on."

On cross-examination, the attorney testified that he became licensed to practice law in 1975. He said that he had tried about three murder cases before he tried the petitioner's case. He said that he interviewed some of the eyewitnesses to the victim's murder over the telephone and that he visited the crime scene. He acknowledged that he wanted evidence of the aggravated assault charge to be admitted at trial because the victim had had the warrant dismissed and he thought that fact

would benefit the petitioner's case. He said that the petitioner had taken alcohol and cocaine before the murder and that he was concerned about the petitioner's mental capacity at the time of the crime. He said that although the petitioner had a below average intelligence quotient (I.Q.), he did not discourage the petitioner from testifying. He said that the petitioner wanted to testify and that he went over the risks of testifying with the petitioner.

The petitioner testified that after he was convicted, his trial attorney came to the jail to talk to him about appealing his case. He said that he told his attorney that he had not made up his mind about whether to appeal. He said that his attorney told him that he would come back in two or three days but that his attorney never returned. He said that he stayed in jail for fourteen days before he was sent to the penitentiary.

The post-conviction court held that the petitioner was entitled to a delayed appeal as to whether the trial court improperly admitted evidence about the aggravated assault warrant and the threatening letter. As to the ineffective assistance of counsel claim, the post-conviction court held that the petitioner's trial attorney did a "very, very thorough job" of defending the petitioner. It determined that his attorney developed a theory of defense but that the jury "didn't buy it and the evidence was such that they really couldn't have bought it." The trial court also stated that the petitioner could not show that he was prejudiced by his trial attorney's errors because the evidence against the petitioner was so overwhelming that the outcome of the trial would have been the same.

In his delayed appeal, the petitioner claims that the trial court erred in admitting into evidence (1) testimony by the victim's mother that the victim had filed an aggravated assault warrant against the petitioner several months before the murder, and (2) a letter that the petitioner's brother had written for the petitioner and delivered to the victim. In his appeal for post-conviction relief, the petitioner claims that he was denied the effective assistance of trial counsel. Although the petitioner's brief also contends that at his trial the court gave erroneous jury instructions as to premeditation, malice, and reasonable doubt, we note that these issues were addressed and resolved against the petitioner in Roy Lane v. State, No. 03C01-9403-CR-00089, Cocke County (Tenn. Crim. App. Jan. 27, 1995). This court's rulings are now the law of the case.

## I. PRIOR BAD ACTS

The petitioner contends that the trial court erred in allowing into evidence (1) testimony by the victim's mother that several months before the petitioner murdered the victim, the victim filed a warrant against the petitioner and (2) a threatening letter that the petitioner's brother wrote for the petitioner and delivered to the victim. He contends that evidence of these prior bad acts was inadmissible under Tenn. R. Evid. 404(b) because it was unduly prejudicial. In addition, he claims that the evidence was inadmissible hearsay. We believe that the evidence was admissible.

Before trial, the petitioner filed a motion in limine to exclude evidence of the aggravated assault warrant on the basis that the evidence was prejudicial. However, during a pretrial hearing, the defense stated that its expert was going to testify about the warrant. The trial court, therefore,

determined that evidence of the warrant was admissible. During the hearing, the petitioner also asked that evidence of the threatening letter be excluded. However, the trial court held that the letter was admissible stating, "It's material, it's relevant. Cogent. On point. Goes straight to the burden of proof on the state."

At trial, the victim's mother testified that several months before the petitioner murdered the victim, the petitioner stabbed the victim in the abdomen and the victim filed a warrant against the petitioner. The victim's mother also testified that sometime after the stabbing incident, the petitioner's brother delivered a letter from the petitioner to the victim. The defense again objected to any evidence about the letter, arguing that the letter was double hearsay because the petitioner's brother had written it. However, the trial court found that the letter was admissible under the party admission exception to the hearsay rule and overruled the objection. See Tenn. R. Evid. 803(1.2). The victim's mother read the letter to the jury. In the letter, the petitioner told the victim to drop the charges against him and stated, "If I have to build any time God will number your days."

Initially, we note that the petitioner's trial attorney stated during the pretrial evidentiary hearing that his own expert was going to testify about the aggravated assault warrant. We also note that when evidence of the warrant was first introduced by the prosecution through the testimony of the victim's mother, the petitioner did not object. We conclude that there is no basis for the petitioner's claim that the trial court erred by admitting the evidence.

As to the petitioner's claim that the threatening letter should have been excluded as a prior bad act, we conclude that the letter was admissible. Rule 404(b), Tenn. R. Evid, prohibits the introduction of evidence of other crimes or acts, except when the evidence of other acts is relevant to a litigated issue, such as identity, intent, or motive, and its probative value is not outweighed by the danger of unfair prejudice. In this case, we believe the letter was admissible to show the petitioner's intent to harm the victim. See State v. Turnbill, 640 S.W.2d 40, 47 (Tenn. Crim. App. 1982) (providing that the "prior relations between the victim and the appellant were relevant matters for the jury's consideration on the question of the appellant's intent"). We also believe that the probative value of the evidence was not outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 404(b)(3).

As to the petitioner's claim that the trial court erred by admitting evidence of the threatening letter because it was double hearsay, we believe, again, that the letter was admissible. First, the letter was not double hearsay because the petitioner could not read or write and had his brother write the letter for him. Thus, the letter was his own statement by adoption. As for the letter being hearsay and, therefore, inadmissible under Tenn. R. Evid. 801(c), we conclude that the letter was admissible under the party admission exception to the hearsay rule. See Tenn. R. Evid. 803(1.2)(A). In addition, we believe the letter was admissible under a second hearsay exception to show the petitioner's motive and mental state. See Tenn. R. Evid. 803(3). Thus, the petitioner is not entitled to relief.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, the petitioner's brief claims that he received the ineffective assistance of counsel because his trial attorney (1) allowed evidence of the aggravated assault warrant to be introduced at trial; (2) introduced the petitioner's cocaine use into evidence; (3) encouraged the petitioner to testify despite the petitioner's having an I.Q. of sixty-three; and (4) did not object to the admissibility of the warrant or threatening letter on the grounds that they were hearsay. The state argues that the petitioner failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced by the deficiency. We believe that the petitioner has failed to demonstrate that he is entitled to relief.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-203.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In this case, the petitioner has failed to meet his burden of showing that the evidence preponderates against the post-conviction court's finding that he received the effective assistance of counsel. Although the petitioner claims that he received the ineffective assistance of counsel because his trial attorney allowed evidence of the aggravated assault warrant to be admitted at trial, introduced evidence of the petitioner's cocaine use, and encouraged him to testify, we believe these issues go to the defense's trial strategy. As this court has previously stated, we do not use the benefit

of hindsight to second-guess trial strategy by counsel and criticize trial counsel's tactical decisions. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In any event, even if the petitioner's attorney rendered deficient performance, in light of the overwhelming evidence against the petitioner, he has failed to demonstrate prejudice. As to the petitioner's claim that his trial attorney was ineffective for failing to object to the admissibility of the warrant and letter on hearsay grounds, we find no basis for these claims. As just discussed, defense counsel's strategy was to use evidence of the warrant to benefit the petitioner's case. Furthermore, the record reflects that the petitioner's trial attorney did object to the admissibility of the threatening letter on the basis that it was hearsay. We conclude that the trial court did not err in finding that the petitioner received the effective assistance of counsel.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE